Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| J.J., individually and on behalf of G.J. a minor, <br><br> Plaintiff, <br><br> vs. <br><br> INNOVATION HEALTH INSURANCE COMPANY and AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | COMPLAINT <br><br> Case No. 2:23-cv-170 |

Plaintiff J.J., individually and on behalf of G.J. a minor, through her undersigned counsel, complains and alleges against Defendant Innovation Health Insurance Company ("Innovation") and Aetna Life Insurance Company ("Aetna") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. J.J. and G.J. are natural persons residing in Oxford County, Maine. J.J. is G.J.'s mother.

2. Innovation is a healthcare partnership between Aetna and another insurer called Inova. Innovation was the insurer and Aetna was the claims administrator for the insurance plan

1

providing coverage for J.J. and G.J. ("the Plan") during the treatment at issue in this case. Both Innovation and Aetna were fiduciaries under ERISA.

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). J.J. was a participant in the Plan and G.J. was a beneficiary of the Plan at all relevant times. J.J. and G.J. continue to be participants and beneficiaries of the Plan.

4. G.J. received medical care and treatment at Maple Lake Academy ("Maple Lake"). While the initial portions of G.J.'s treatment at Maple Lake were covered by a different insurer and health plan, the Defendants became responsible for coverage of G.J.'s treatment from March 1, 2020, forward.

5. Maple Lake is a licensed residential treatment facility located in Utah County, Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

6. Defendants denied claims for payment of G.J.'s medical expenses in connection with his treatment Maple Lake.

7. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Defendants do business in Utah, Aetna has several business offices in Utah, and the treatment at issue took place in Utah.

9. In addition, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs she will be

responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both her and G.J.'s privacy will be preserved.

10. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

11. Defendants became responsible for G.J.'s treatment at Maple Lake on March 1, 2020.

12. G.J. was admitted to Maple Lake due to struggles with depression, anxiety, suicidal ideation, property destruction, trauma, and significant aggression which had not been able to be adequately managed at other levels of care.

13. In a letter dated May 13, 2020, Defendants denied payment for G.J.'s treatment at Maple Lake. The letter stated in relevant part:

> We reviewed information received about the member's condition and circumstances and the member's benefit plan. We are denying coverage for Mental Health Residential treatment. Mental Health Residential treatment programs must be accredited by one of the following agencies, commissions or committees for the services being provided: The Joint Commission (TJC), The Committee on Accreditation of Rehabilitation Facilities (CARF), the American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP) and/or The Council on Accreditation (COA). Therefore, Mental Health Residential treatment is not covered under the terms of the plan.

3

14. On September 24, 2020, J.J. appealed the denial of payment for G.J.'s treatment. She stated that in addition to the above denial she had received Explanation of Benefits statements which denied payment due to, "[t]his amount is not covered because our records indicate the member did not comply with precertification procedures.

15. She asked that a full, fair, and thorough review be performed by appropriately qualified reviewers who considered all the information she provided. She requested that the reviewers have experience with MHPAEA and asked to be provided with a physical copy of all information related to the initial decision as well as the appeal determination.

16. She contended that Defendants violated MHPAEA when they required residential treatment facilities to be accredited by one of four specific agencies but did not require analogous medical or surgical facilities to be similarly accredited.

17. She wrote that Defendants also imposed facility eligibility requirements such as "a behavioral health provider must be actively on duty per day for 7 days a week" or "[t]he patient must be treated by a psychiatrist at least once per week," however they did not impose comparable facility eligibility requirements on analogous medical or surgical facilities.

18. She stated that the Defendants approved medical or surgical care so long as the facility in question was appropriately licensed and compliant with applicable laws. Residential treatment facilities however not only had to meet these requirements but other additional requirements as well.

19. She pointed out that Maple Lake was licensed by the State of Utah and that if Defendants had applied the same requirements on Maple Lake they applied to medical or surgical facilities in the same classification, G.J.'s treatment would have been approved.

20. She asked Defendants to perform a MHPAEA compliance analysis and asked for physical copies of the results of this analysis.
21. .J. also asked in the event the denial was upheld that she be provided with the documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, any medical necessity criteria that were utilized in the determination, along with their medical or surgical equivalents (whether or not these were used to evaluate the claim), as well as the names, qualifications, and denial rates of all individuals who evaluated the claim (collectively the "Plan Documents").
22. She argued that Defendants should not have totally denied payment due to a lack of precertification.
23. In a letter dated October 21, 2020, Defendants again denied payment for G.J.'s treatment at Maple Lake. The letter stated that payment would remain denied as Maple Lake "does not meet the definition of a residential treatment facility."
24. The letter stated that payment had been issued in error for some dates of service and a refund request would be sent to Maple Lake for these services.
25. On November 24, 2020, J.J. submitted a level two appeal of the denial of payment for G.J.'s treatment. She continued to assert that G.J.'s treatment was a covered benefit and argued that Defendants had not complied with their obligations under ERISA.
26. She wrote that Defendants had seemingly arbitrarily not evaluated dates of service after September 30, 2020, and again asked for Defendants to evaluate all dates of service from March 1, 2020, when they became responsible for insuring and administering the Plan,

until G.J. was discharged. She also noted that Defendants' denial incorrectly referred to G.J.'s inpatient residential treatment as "outpatient facility services."

27. She argued that Defendants had not addressed the arguments she raised, nor had they provided the documentation she requested. By withholding these documents, she stated the Defendants were preventing her from verifying whether the Plan was compliant with MHPAEA and she was unable to determine whether the Plan was being administered properly. She questioned how she could be expected to engage in a meaningful dialogue with Defendants when they ignored all the information she had provided.

28. She stated the Defendants were violating MHPAEA by imposing on residential treatment centers a litany of additional requirements above and beyond state licensure and exempting analogous medical and surgical facilities from those same requirements. She again asked Defendants to conduct a MHPAEA compliance analysis on the Plan and again asked to be provided with a copy of the Plan Documents.

29. In a letter dated January 14, 2021, Defendants again denied payment for G.J.'s treatment. The letter stated that dates from August 1, 2020, through August 30, 2020, and dates after September 30, 2020, had not been evaluated as part of this denial but would be reviewed under a separate cover. The letter then stated in pertinent part:

> Innovation Health does not standardly reimburse for the use of facilities that do not meet the plan definition of Residential Treatment Facilities. Our review found no state mandate or exceptions applicable to allow coverage. Therefore, no payment will be made for this claim.
>
> We reviewed information received about the member's condition and circumstances and the member's benefit plan. We are denying coverage for mental health residential treatment. Mental health residential treatment programs must be accredited by one of the following agencies, commission or committees for the services being provided: The Joint Commission (TJC), The Committee on Accreditation of Rehabilitation Facilities (CARF), The American Osteopathic Association's Healthcare Facilities Accreditation Program (HFAP) and/or The

6

Council on Accreditation (COA). Therefore, mental health residential treatment is not covered under the terms of the plan.

30. Despite Innovation's statement that it would evaluate the dates it had not reviewed under separate cover, J.J. did not receive any additional correspondence.

31. On March 17, 2021, J.J. submitted an additional level two appeal of the denial of payment for G.J.'s treatment at Maple Lake. She argued that as Defendants had arbitrarily refused to consider G.J.'s full dates of service, she was submitting an additional appeal to ensure that all dates of service through G.J.'s discharge date were considered.

32. She argued that the Defendants continued to ignore her requests for documents, had not conducted a parity analysis as she had requested, and had not utilized an appropriately qualified reviewer. She asked the Defendants to correct these errors and once more asked to be provided with a copy of the Plan Documents.

33. J.J. did not receive a response to this letter.

34. The Plaintiff exhausted her pre-litigation appeal obligations under the terms of the Plan and ERISA.

35. The denial of benefits for G.J.'s treatment was a breach of contract and caused J.J. to incur medical expenses that should have been paid by the Plan in an amount totaling over $150,000.

36. The Defendants failed to produce a copy of the Plan Documents including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities despite J.J.'s requests.

//

//

# FIRST CAUSE OF ACTION

## (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

37. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Innovation and Aetna, acting as agents of the Plan, to discharge their duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

38. The Defendants failed to provide coverage for G.J.'s treatment in violation of the express terms of the Plan which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

39. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiff in the pre-litigation appeal process. 29 U.S.C. §1133(2).

40. The denial letters produced by the Defendants do little to elucidate whether they conducted a meaningful analysis of the Plaintiff's appeals or whether they provided her with the "full and fair review" to which J.J. was entitled. Innovation and Aetna failed to substantively respond to the issues presented in J.J.'s appeals and did not meaningfully address the arguments or concerns she raised during the appeals process.

41. The Defendants breached their fiduciary duties to G.J. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in G.J.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon

request, and to provide a full and fair review of G.J.'s claims.

42. The actions of Innovation and Aetna in failing to provide coverage for G.J.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

43. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of the Defendants' fiduciary duties.

44. MHPAEA requires ERISA plans provide no less generous coverage for treatment of mental health and substance use disorders than for treatment of medical/surgical disorders.

45. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

46. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of

benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

47. The facility eligibility criteria used by Defendants for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the facility eligibility criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

48. Comparable benefits offered by the Defendants for medical/surgical treatment analogous to the benefits Innovation and Aetna excluded for G.J.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment do Defendants exclude or restrict coverage of medical/surgical conditions in the same way they did G.J.'s treatment.

49. When Defendants receive claims for intermediate level treatment of medical and surgical conditions, they process the claims as outlined in the terms of the Plan and based on generally accepted standards of medical practice. The Defendants evaluated G.J.'s mental health claims using facility eligibility criteria that deviate from generally accepted standards of medical practice.

50. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

51. As an example of disparate application of facility eligibility criteria between medical/surgical and mental health treatment, Defendants require that residential treatment centers be accredited by one or more of four specific accreditation agencies. Defendants do not require analogous medical or surgical services be accredited this way.

52. Although Defendants purport to offer residential treatment services to its insureds, their repeated denial letter statements that "mental health residential treatment is not covered under the terms of the plan" indicates that they place limitations on coverage for residential treatment which are more stringent that the limits they place on coverage for comparable types of medical and surgical treatment.

53. Defendants require not only that a residential treatment center be accredited by one of four specific agencies, but also mandate that "a behavioral health provider must be actively on duty per day for 7 days a week" and "[t]he patient must be treated by a psychiatrist at least once per week" for residential treatment centers to be covered under under the Plan.

54. Few residential treatment centers across the country provide services that satisfy these criteria. Imposing these treatment limitations as conditions for coverage allows Defendants to provide the appearance that residential treatment is a covered benefit, while avoiding essentially all risk of paying residential treatment claims, even for licensed residential treatment facilities like Maple Lake.

55. The Defendants do not limit coverage for inpatient skilled nursing, rehabilitation, and hospice treatment in a way that effectually excludes coverage for those types of care nor does it violate generally accepted standards of medical practice in how it processes and pays or denies claims from those providers.

56. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the facility eligibility criteria utilized by the Defendants, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and

more stringently applied than, the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

57. The Defendants did not produce the documents the Plaintiff requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiff's allegations that the Defendants were not in compliance with MHPAEA.

58. In fact, despite J.J.'s request that the Defendants conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, the Defendants have not provided J.J. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, they have not provided J.J. with any information about the results of this analysis.

59. The violations of MHPAEA by Innovation and Aetna are breaches of fiduciary duty and also give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiff as make-whole relief for her loss;

(g) An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiff for her loss arising out of the Defendants' violation of MHPAEA.

60. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for G.J.'s medically necessary treatment at Maple Lake under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 8th day of March, 2023.

By    s/ Brian S. King
Brian S. King
Attorney for Plaintiff

County of Plaintiff's Residence:
Oxford County, Maine